## UNITED STATES v. GREATER NEW YORK LIVE POULTRY CHAMBER OF COMMERCE et al.

District Court, S. D. New York.

May 5, 1931.

John Lord O'Brian, Asst. to Atty. Gen. (Walter L. Rice, Sp. Asst. Atty. Gen., of counsel), for the motion.

Samuel H. Kaufman, of New York City, opposed.

District Court, S. D. New York.

Oct. 26, 1931.

George Z. Medalie, U. S. Atty., of New York City (John Lord O'Brian, Asst. to Atty. Gen., and Walter Rice, Sp. Asst. to Atty. Gen., of counsel), for the United States.

Goldstein & Goldstein, of New York City (Joseph F. Kroppy and Jonah J. Goldstein, both of New York City, of counsel), for defendant Greater New York Live Poultry Chamber of Commerce and others.

Breed, Abbott & Morgan, of New York City (B. A. Kozicke, of New York City, of counsel), for defendant Ole Salthe.

Milton C. Weisman, of New York City, for defendant Meyer Weiss.

Sol. H. Eisler, of New York City, for defendant Arthur Herbert.

Samuel H. Kaufman, of New York City, for defendants Local 167 of International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America, and others.

WOOLSEY, District Judge.

I grant the motions in so far as they are aimed at answers filed by defendants who were convicted in the criminal prosecution heretofore had in this court.

I deny the motions in so far as they are aimed at answers filed by defendants who were not parties to the said criminal prosecution, or if parties thereto, were not convicted therein.

I. There has not been any order entered either on Judge Bondy's opinion of August 9, 1930, U. S. A. v. Greater New York Live Poultry Chamber of Commerce et al. (D. C.) 44 F.(2d) 393, 394, nor on my own opinion herein filed May 5, 1931. 53 F.(2d) 518.

The questions here involved, therefore, are still juridically at large, and with Judge Bondy's consent and approval I am going to deal with them here de novo in my own way as if there had not been any expression of opinion heretofore given either by him or by me thereon.

II. This suit is somewhat unusual, in that it is an equity suit intended to be based on a judgment of conviction in the latter part of 1929 on a criminal prosecution in this court for a conspiracy in restraint of trade in interstate commerce. This conviction was affirmed. Greater N. Y. Live Poultry Chamber of Commerce v. U. S. A. (C. C. A.) 47 F.(2d) 156.

One would have supposed that, in a complicated case like this, involving so many parties defendant, the United States, in commencing this suit which was brought in April, 1930, after the conviction of sixty-eight of the defendants herein named, would have annexed the judgment roll in the criminal case to the petition as a schedule thereof, and would have alleged, naming them, that sixty-eight of the defendants here were found guilty beyond a reasonable doubt in the criminal case of the conspiracy here complained of, and thus would have pleaded the conspiracy as a judicially established fact and relied on it as such for the relief here sought.

For some reason, which even after hearing the arguments still remains inscrutable to me, the United States has set forth a conspiracy in its petition in the same words as it is printed in the indictment but as if the situation involved what I may appropriately call raw facts about a conspiracy, instead of an adjudicated conspiracy, established by a criminal conviction as against sixty-eight of these defendants.

It is owing to this failure of the government to avail itself in its pleadings of the advantage which it had achieved by the conviction of sixty-eight of these defendants after a long and arduous trial before Judge Knox that its repeated interlocutory motions addressed to the defendants' answers have become necessary in order to clarify the situation as much as may be before trial. I find that the government is objecting to procedural tactics on the part of the defendants

previously convicted, which are the natural, if not the necessary, results of the government's procedural strategy.

Conspirators differ one from the other in their attitudes and their partnership activities, and it is natural for any conspirator who finds an opportunity to do so to endeavor to clear himself of some of the more odious of the acts of his associates. So a defendant who may have been convicted of a participation in a conspiracy in which all the acts alleged in the first twenty-three paragraphs of the petition occurred and all the purposes therein alleged were involved may have himself intended to commit and may have committed only one of those acts, and consequently would naturally be averse from admitting the other acts or any implication involved in them. By way of example, a defendant, who might have followed and spied upon poultry dealers, butchers, and marketmen, might have been willing only vicariously through his associates to have cut tires, placed bombs in shops, or set fire to stores or vehicles.

■ III. But an advantage lost by a mistake in strategy is sometimes retrieved by successful tactics after contact has been established with the opposing forces. So here, after the issues have been joined, the government is able, because the criminal prosecution was in this court, to fall back on the doctrine of judicial notice to support its motions and save its situation. The ineptness of the government's procedural strategy, therefore, does not preclude me from giving it the relief which it seeks, so far as the sixty-eight defendants who were convicted in the criminal proceeding are concerned; for the whole judgment roll in the criminal case is on file in this court as part of its records, and consequently, though not pleaded, is subject to my judicial notice. United States v. California Canneries, 279 U. S. 553, 555, 49 S. Ct. 423; 73 L. Ed. 838; Aspen Mining & Smelting Co. v. Billings, 150 U. S. 31, 38, 14 S. Ct. 4, 37 L. Ed. 986; Butler v. Eaton, 141 U. S. 240, 243, 244, 11 S. Ct. 985, 35 L. Ed. 713; French v. Senate of State of California, 146 Cal. 604, 607, 80 P. 1031, 1033, 69 L. R. A. 556, 2 Ann. Cas. 756. And cf. Martin v. Kennecott Copper Corporation, 252 F. 207 (D. C. W. D. of Washington); Hubbard v. Lowe, Collector (D. C.) 226 F. 135, 139.

■ Examination of this judgment roll shows that any denials by the defendants in this suit who were convicted in the criminal action of the first twenty-three paragraphs of the petition or of any one of those paragraphs, or of any of the allegations therein contained, are sham denials made for obstructive purposes only, and therefore should be stricken out.

■ IV. On the other hand, when I turn to the defendants herein named against whom the estoppel of the criminal judgment does not obtain for the reason that they were not parties to the criminal action or were not convicted therein, the situation is wholly different.

In the case of such defendants, both parties are necessarily at large, and there is not, as appears to be argued by the government, even a partial estoppel against any of them, if such a thing can be conceived. Each of such defendants is entitled to his day in court on all of the issues which he has seen fit to raise. Consequently, of course, he has a perfect right to challenge the existence of the conspiracy alleged in the petition and is not limited, as the government would like to limit him, to an issue as to whether he participated in the conspiracy already judicially established inter alios.

■ So long as a defendant follows the required form in making a denial and the denial cannot be stricken out on the ground that it is sham, a court is not at liberty, even in order to save time at the trial by simplifying or clarifying the situation, to change the pattern of the issues which such defendant has determined to raise. The Nesco (United States v. St. Paul Fire & Marine Ins. Co.) 47 F.(2d) 643, 647 (D. C.).

V. Orders hereon may be settled on two days' notice, and, as the rule requires, should be submitted, in the first instance, to the clerk of this court.