OPINION OF THE COURT
Helen E. Freedman, J.
Respondents,* realtors and developers, move in this proceeding to vacate the ex parte order issued on April 3, 1987, which directed respondents to appear before the petitioner, Attorney-General, for an investigation in connection with development of condominiums at 250 and 270 Shore Road, Long Beach, New York, pursuant to article 23-A of the General Business Law (Martin Act). That order also preliminarily enjoined respondents from taking any steps to further the condominium development plan including eviction proceedings and administrative proceedings before the New York State Division of Housing and Community Renewal (DHCR), pending the Attorney-General’s investigation.
The history and background of this proceeding is as follows: On December 15, 1986, respondent Long Beach Oceanfront Associates Limited Partnership (landlord) acquired title to two apartment buildings located at 250 and 270 Shore Road in the City of Long Beach, which it sought to convert to condominiums.
The building at 250 Shore Road is a seven-story apartment house containing 40 residential units, which do not appear to be subject to rent regulation laws. Summary proceedings brought in the District Court of Nassau County resulted in eviction orders against several tenants of this building. The building at 270 Shore Road is a two-story building containing 62 apartments, subject to the Emergency Tenant Protection Act. Respondents have commenced a proceeding, now pending, before DHCR, seeking an order of demolition in order to construct a new building containing condominium units. The tenants of 270 Shore Road have filed a complaint with DHCR alleging harassment by the landlord and have brought a RPAPL article 7-A proceeding in the Nassau County District Court. On or about February 23, 1987 the landlord issued a private placement memorandum seeking to solicit investors to participate in the development of the two premises in question into condominium units.
*139 The ex parte order signed by the Honorable Jawn Sandifer on April 3, 1987, preliminarily enjoined respondents, inter alia, from promoting, negotiating, advertising, offering for sale, selling or closing title to cooperative (condominium) interests in the two premises, from offering buy-outs to tenants, and from failing to provide essential services; stayed the eviction proceedings in the Nassau County District Courts and enjoined any subsequent eviction proceedings; stayed the demolition application proceedings before DHCR and directed an investigation by the Attorney-General.
On April 10, 1987, this court modified Justice Sandifer’s order to the extent that it vacated the stays of proceedings already pending before the Nassau County District Court, the Appellate Term and DHCR. Final executions in the eviction proceedings were stayed pending the hearing on the motion. On April 21, 1987, the Appellate Term for the Ninth and Tenth Judicial Districts denied motions to stay evictions pending appeal, stating that it failed to see any merit to the appeals.
On the return date of the motion, May 1, 1987, this court vacated its stays of execution on the ground that it would neither interfere with other courts of coordinate jurisdiction, nor with proceedings already underway before DHCR. This decision is therefore limited to consideration of the appropriateness of the other relief granted in the April 3, 1987 order including a stay of all eviction proceedings not commenced as of this court’s April 10th order.
Respondents maintain that since only a private placement memorandum soliciting investors has been issued, this General Business Law article 23-A proceeding is premature in that the Attorney-General lacks jurisdiction to conduct an investigation before a public offering of securities pursuant to General Business Law § 352 has been made. They deny that any fraudulent practices have occurred but have voluntarily (without prejudice to their legal position) produced several witnesses and documents for investigation by the Attorney-General.
Petitioner Abrams contends that the General Business Law (§§ 353, 354) grants it broad investigatory powers and that it need not wait until the formal presentation of a public offering in order to forestall allegedly fraudulent practices in connection with a proposed offering of condominium units for sale. The Attorney-General claims that respondents are cur *140 rently engaging in fraudulent tactics designed to empty the premises of tenants, including failure to provide essential services; buy-out offers and promises of future condominiums.
The New York State Legislature enacted article 23-A of the General Business Law, generally known as the Martin Act, in an effort to prevent fraudulent practices in connection with the sale of securities. The broad investor-protection and anti-fraud powers of the Attorney-General under the act have long been recognized by the courts. (People v Federated Radio Corp., 244 NY 33 [1926]; Matter of Ottinger v State Civ. Serv. Commn., 240 NY 435 [1925].)
Section 353 of the General Business Law specifically authorizes the Attorney-General to institute an action, "[w]henever the attorney-general shall believe from evidence satisfactory to him that any person, partnership, corporation, company, trust or association has engaged in, is engaged or is about to engage in any of the practices or transactions heretofore referred to as and declared to be fraudulent practices”. Among the fraudulent practices defined in General Business Law § 352 are harassment and schemes to defraud in order to obtain money or property by means of any false representation or promise. General Business Law § 354 authorizes the Attorney-General to apply for an order initiating an investigation involving the sale of securities (before the court or a designated Referee) prior to commencing an action under General Business Law § 353. The Attorney-General need not establish a prima facie case for a section 354 order, since the purpose of the inquiry is to preserve the status quo while determining whether a case can be made out. (See, Matter of Edge Ho Holding Corp., 256 NY 374 [1931]; Matter of Attorney-General of State of N. Y. [Cenvill Communities], 82 Misc 2d 418 [Sup Ct, NY County 1975].)
Respondents’ argument that the Attorney-General’s action is premature is without merit in light of the broad powers set forth in General Business Law §§ 353, 354 and the underlying purpose of the Martin Act. To accept respondents’ interpretation of the act would permit sponsors of condominiums, who have stated a written intention to engage in the sale of securities, to engage in fraudulent practices (e.g., offering buyouts and future units to tenants and denying tenants essential services) prior to filing in order to assure the success of the conversion plan. To allow a sponsor to engage in harassment *141 tactics so long as they are done early in the process would violate the remedial purpose of the statute. (See, State of New York v 820 Assocs., 116 Misc 2d 901 [Sup Ct, NY County 1982], affd 93 AD2d 1008 [1st Dept 1983].) It would be absurd to require the Attorney-General to wait until a fraudulent scheme to empty the premises is completed before taking any action. (See, State of New York v Fogelson, Sup Ct, NY County, index No. 41977/86, Dec. 2, 1986.)
In the current proceeding, petitioner Abrams claims that buy-out offers were made to the tenants at 270 Shore Road in attempt to empty the premises before presenting a formal offering plan and in order to avoid the disclosure and filing requirements of the Martin Act. The policy of prohibiting preoffering buy-outs to tenants has been upheld by the Appellate Division, First Department. (490 Ocean Assocs. v Abrams, Sup Ct, NY County, index No. 16351/86, affd 128 AD2d 1027 [1st Dept 1987].) In that case, the court held that the Martin Act empowered the Attorney-General to prevent landlords from accumulating vacant apartments through buy-outs in order to achieve required percentages for conversion before formal acceptance of a cooperative conversion plan by the Attorney-General.
Tenants have also testified that they have been secretly offered units in the proposed condominiums in both buildings. This appears to be another attempt to circumvent the filing and disclosure provisions of the Martin Act, which provide that no person in New York can make or take part in a public offering of sale of real estate securities without having first filed an offering plan with the Attorney-General. (General Business Law § 352-e.)
Petitioner further contends that the respondents have harassed tenants by failing to provide essential services at both premises, and taking steps to remove terraces on numerous apartments at 270 Shore Road instead of repairing them.
In the instant proceeding the Attorney-General has set forth reasonable cause to believe that violations of the Martin Act have occurred. There is sufficient evidence that a campaign to buy-out tenants has taken place, that certain tenants at both premises have been offered future condominiums, and that some tenants have been harassed to warrant further investigation by the Attorney-General.
*142 Accordingly, for the reasons stated above, respondents’ motion to vacate the April 3, 1987 order of Justice Sandifer is denied and that order (except as modified by this court in its orders dated Apr. 10, 1987 and May 1, 1987) remains in effect. All eviction proceedings not commenced prior to this court’s April 10, 1987 order are stayed pending investigation by the Attorney-General.

 Long Beach Oceanfront Associates Limited Partnership, Real Estate Equities and Michael Miller.